# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

ANGEL GOMEZ,  )
            )
v.          )  Case No. CV413-001
            )            CR410-100
UNITED STATES OF AMERICA  )

## REPORT AND RECOMMENDATION

Angel Gomez moves this Court for 28 U.S.C. § 2255 relief. CR410-100.[1] He was convicted of importing controlled substances, 21 U.S.C. §§ 960, 952, 851, possessing controlled substances with intent to distribute, *id.* §§ 851, 841(a)(1), stowing away on a vessel, 18 U.S.C. § 2199, and smuggling goods into the United States, *id.* § 545. *United States v. Garcia-Duran,* 453 F. App'x 950, 950 (11th Cir. 2012); doc. 186 at 1-2. On his unsuccessful appeal, he argued that (1) the district court abused its discretion by refusing to give a requested "duress" jury instruction; and (2) there was a discrepancy in the oral and written judgments regarding the payment of his fine. *Garcia-Duran,* 453 F. App'x at 950.

---

[1] The Court is citing only to the criminal docket and using its docketing software's pagination; it may not always line up with each paper document's printed pagination.

Here Gomez raises only one § 2255 ground: that his attorney, Thomas L. Cole, provided him with ineffective assistance of counsel.[2]

When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Proceedings. The Court exercises that authority here.

On direct appeal the Eleventh Circuit addressed Gomez's "duress" defense and explained, as does Gomez himself in his § 2255 motion, that Rodrigo Temple Wood, Gomez, and Garcia-Duran boarded a ship in Panama that landed in the United States. 453 F. App'x at 950-51. After disembarking the ship the men were almost immediately caught

---

[2] For ineffective assistance of counsel to provide a basis for federal habeas relief, movant must satisfy the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that his counsel's performance was deficient and that it prejudiced his defense. *Id.* To show prejudice, he need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. *Id.* at 694. A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." *Id.* Gomez thus must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel. *Id.* at 687. "Surmounting *Strickland* 's high bar is never an easy task." *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1485 (2010); *Garcia-Duran v. United States*, 2013 WL 164423 at * 1 n. 2 (S.D. Ga. Jan. 14, 2013).

smuggling drugs. *See infra* n. 3. Gomez and Garcia-Duran claimed that Wood forced them to commit the charged offenses. *Garcia-Duran*, 453 F. App'x at 951. Yet, said the Eleventh Circuit, they

> failed to prove that they could not have availed themselves of reasonable opportunities to alert law enforcement or escape from Wood. As they disembarked the ship in the United States, Garcia–Duran and Gomez could have, but failed, to reveal the drugs concealed at their waistbands to either longshoremen or customs officers. Garcia–Duran, Gomez, and Wood left the dock in a taxi, but when Wood fled the moving taxi, Garcia–Duran and Gomez fled too. Neither Garcia–Duran, who is fluent in English, nor Gomez sought assistance from the taxi driver.

*Id.* And "[w]hen arrested, Garcia–Duran and Gomez did not assert that they had acted under duress." *Id.* Hence, the district court committed no error in refusing to give a jury instruction on their duress defense. *Id.*

In his only § 2255 claim, Gomez faults Cole for failing to cross-examine Wood adequately. To support that claim Gomez, via supporting affidavit, supplies surrounding context by summarizing Wood's testimony. Wood said that he, Gomez, and Garcia-Duran each carried two kilograms (evidently of a cocaine and heroin mixture, doc. 16 at 3) from the ship onto the shore. Doc. 228 at 17. After Wood was arrested, Gomez told him not to mention anything about the drugs and that Wood should remember that he has family in Panama. Finally, both Gomez

3

and Garcia-Duran asked Wood to take full responsibility for the off-loaded drugs. *Id.*[3]

---

[3] This summary comports with the trial transcript, though Gomez unsurprisingly fails to note plenty of testimony incriminating himself. Wood testified that he met Gomez in Panama, through Gomez's uncle Jorge. Doc. 202 at 72. Twice before Wood had entered the United States but was caught. *Id.* at 72-73. Wood wanted to re-enter the United States and Jorge convinced him to travel with Gomez and Garcia-Duran. *Id.* at 74. From those conversations Wood came to believe that he would be paid $10,000, presumably to carry drugs with him into the U.S. *Id.* at 75.

Jorge gave both Wood and Gomez cell phones. *Id.* at 76. He also gave all three men a 1-kilogram package of drugs for each to take ashore. *Id.* at 77, 88. If Wood got lost onshore he was to call a contact named "Negro." *Id.* Wood also was given a bag with food. *Id.* While still on the ship in Panama, Wood heard Gomez talking to Gomez's wife, and "he said to keep the money. That they should save, yes, save their money." *Id.* at 80. No one had any weapons. *Id.* at 81.

When the ship that the men chose to travel on arrived in Savannah, Georgia, Gomez told Wood to put on a waistband so he could carry two square packages inside of them. Each of the three men did so. *Id.* at 82. Wood objected to carrying two but Gomez "told me I had to take them out, for me to remember that his uncle knows where my family lives in Panama." *Id.* at 83. On the night before the ship's arrival, Gomez instructed Wood to get rid of the food and clothing that had previously been given to him. *Id.* at 85.

Once in port, the three men climbed down the ship's ladder to the dock and Garcia-Duran called a taxi. *Id.* at 85-86. Wood asked how the men were going to exit the port and Gomez told him not to worry. *Id.* at 86. But soon Garcia-Duran argued with the taxi driver, who said they all needed passes to exit the port. *Id.* at 86-97. After Wood said that that he had no pass, Garcia-Duran told him to get out and run, so he did. *Id.* at 87. "We all left running." *Id.*

The police chased them, and Gomez took the drugs from Wood, but soon the police captured all three men and placed them in a patrol car. *Id.* at 88. There Gomez instructed Wood to remain silent about the drugs and reminded him of his family in Panama. *Id.* Then Garcia-Duran "told me that I should have the case because they had, they had drug cases here. And that if I took the case, they were going to talk to Jorge in Panama to give me a car." *Id.* Wood later pled guilty and testified against Garcia-Duran and Gomez. *Id.* at 88-89.

4

Cole, Gomez contends, deficiently performed by asking Wood just "one legally proper question . . . . 'How many times have you been in jail?'" Doc. 228 at 17. Wood answered none in the United States, and only once in his own country, in conjunction with an accident. Doc. 228 at 17. Gomez insists Cole should have asked Wood about his cooperation agreement with the government, along with his sentencing expectations. *Id.* at 17-18. Plus he should have explored "Wood's motives to fabricate all or part of his trial testimony; the role of Gomez in the offense of conviction; Wood's motive to enter into his cooperation agreement; etc." *Id.* at 18.

This claim fails. The burden is on the movant to show prejudice -- that the "missed" questioning would have made a difference. *See United States v. Orr*, 636 F.3d 944, 953-54 (8th Cir. 2011) (adversarial witness's testimony regarding defendant's drug distribution was cumulative, and thus defendant was not prejudiced by counsel's failure to impeach witness with prior inconsistent statements on cross–examination in prosecution for various crack cocaine and firearm offenses, precluding ineffective assistance claim; in addition to witness's unimpeached testimony, jury heard testimony from law enforcement and confidential

informants regarding controlled buys from defendant, and drugs and drug paraphernalia were seized at defendant's house and linked to defendant).[4]

At most Gomez asks this Court to speculate. That is not enough, especially since: (a) the evidence against him was overwhelming -- the men were caught red-handed and Gomez does *not* challenge the Eleventh Circuit's factual recitation; (b) Gomez has tendered no affidavit or otherwise shown any of Wood's testimony to be false; and (c) Gomez fails to show how a rational jury would have been swayed by his proffered extra layer of cross-examination, as premised on the mere superillumination of Wood's prior history and bad character.

---

[4] *See also Sowell v. Anderson*, 663 F.3d 783, 800 (6th Cir. 2011) (defendant had not been prejudiced in capital murder trial by trial counsel's alleged ineffective assistance in not cross-examining witness to shooting, since identity of defendant as shooter was never in question and witness had not been potential suspect, and even if counsel would have highlighted inconsistencies between witness' testimony and that of shooting victim, those inconsistencies concerned somewhat collateral matters); *Manchas v. Superintendent of SCI Huntingdon*, 428 F. App'x 184, 191 (3rd Cir. 2011); *United States v. Munoz*, 605 F.3d 359, 380-81 (6th Cir. 2010) (defense counsel's re-cross examination of government witness, which failed to highlight the fact that witness did not tell government that defendant knew the package he delivered contained drugs until after he entered into plea agreement, was not deficient assistance in drug conspiracy prosecution for purposes of ineffective assistance of counsel claim; after skillfully impeaching witness counsel did undermine the government's attempt to rehabilitate him on different basis that witness's motive to lie preceded the plea agreement); CRIM. PRO. HANDBOOK § 3:54 (June 2012) (collecting cases).

Hence, Gomez can meet neither *Strickland* prong, so his IAC claim fails. That, in turn, means his § 2255 motion must be denied. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED**, this 30Th day of January, 2013.

UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA